## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| AMERICAN HOTEL REGISTER | ) | Case No. 21-11733 (ABG) |
| COMPANY | ) | |
| | ) | |
| Alleged Debtor. | ) | |
| | ) | |

## <u>NOTICE OF MOTION</u>

**PLEASE TAKE NOTICE** that on November 19, 2021, at 11:00am, I will appear before the Honorable A. Benjamin Goldgar, Bankruptcy Judge, or any other Judge who may be sitting in that judge's place, and present the Joint Motion of Vernon Hills Service Company (f/k/a American Hotel Register Company) and VHSC ABC LLC, as assignee for the benefit of VHSC's creditors to Dismiss the Involuntary Petition, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is 160 817 7512 and the password is 623389. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to the Motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

By:  /s/ E. Philip Groben
One of his Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606

Phone:  312-263-2200
Fax:  312-263-2242

<u>**CERTIFICATE OF SERVICE**</u>

STATE OF ILLINOIS    )
                          )     SS
COUNTY OF COOK      )

E. PHILIP GROBEN, being first duly sworn on oath, deposes and stated that he served a copy of the foregoing Notice together with a copy of the Motion attached thereto on the persons named below, as indicated, either by service through CM/ECF on November 10, 2021, or via overnight delivery on November 11, 2021.

BY: /s/ E. Philip Groben      

Marc S Lichtman – Service via CM/ECF
Jonathan H. Miller – Service via CM/ECF
Patrick S. Layng – Service via CM/ECF

Marc S Lichtman – Service via Overnight Delivery to Lichtman Eisen Partners, Ltd., 134 North
      LaSalle Street, Suite 750, Chicago, IL 60602

Jonathan H. Miller – Service via Overnight Delivery to The Sarachek Law Firm, 670 White
      Plains Road, Ph Floor, Scarsdale, NY 10583

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| AMERICAN HOTEL REGISTER | ) | Case No. 21-11733 (ABG) |
| COMPANY | ) | |
| | ) | |
| Alleged Debtor. | ) | |
| | ) | |

**JOINT MOTION OF THE ALLEGED DEBTOR AND THE ASSIGNEE (I) FOR DISMISSAL OF, OR ABSTENTION FROM, THE INVOLUNTARY BANKRUPTCY PETITION, (II) FOR AN AWARD OF FEES, COSTS, AND DAMAGES, AND (III) TO REQUIRE THE PETITIONING CREDITORS TO POST A BOND INDEMNIFYING THE MOVANTS**

Vernon Hills Service Company (f/k/a American Hotel Register Company) ("VHSC" or the "Alleged Debtor") and VHSC ABC LLC, as assignee for the benefit of VHSC's creditors (the "Assignee," and together with VHSC, collectively the "Movants"), hereby move  (the "Motion") in response to the involuntary chapter 7 petition filed on October 14, 2021 (D.I. 1) (the "Involuntary Petition") by The Winsford Company, LLC ("Winsford"), Scribe Opco, Inc. ("Scribe"), and SLFAQ LLC ("SLFAQ," together with Winsford and Scribe, the "Petitioning Creditors").  By this Motion, the Movants seek entry of an order, substantially in the form attached hereto (the "Order"), (i) dismissing the Involuntary Petition or, in the alternative, abstaining from entry of an order for relief on the Involuntary Petition, (ii) awarding attorneys' fees, costs, and damages, and (iii) requiring the Petitioning Creditors to post a bond to indemnify the Movants. This Motion is brought pursuant to sections 303 and 305 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 1011 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules").  In support of this Motion, the Movants submit (i) the *Declaration of Sandeep*

*Gupta in Support of the Joint Motion of the Alleged Debtor and the Assignee (I) for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition, (II) for an Award of Fees, Costs, and Damages, and (III) to Require the Petitioning Creditors to Post a Bond Indemnifying the Movants* (the "Gupta Declaration"), (ii) the *Declaration of Andrew B. Ryan in Support of the Joint Motion of the Alleged Debtor and the Assignee (I) for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition, (II) for an Award of Fees, Costs, and Damages, and (III) to Require the Petitioning Creditors to Post a Bond Indemnifying the Movants* (the "Ryan Declaration"), and (iii) the *Declaration of Eli J. Kay-Oliphant in Support of the Joint Motion of the Alleged Debtor and the Assignee (I) for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition, (II) for an Award of Fees, Costs, and Damages, and (III) to Require the Petitioning Creditors to Post a Bond Indemnifying the Movants* (the "Kay-Oliphant Declaration") each filed contemporaneously herewith. In further support of the Motion, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT[1]

1.    The Involuntary Petition must be dismissed. First, the entities that filed this case fail to meet the threshold eligibility requirements of 303(b)(1) of the Bankruptcy Code because two of them hold purported claims that are subject to a bona fide dispute as to liability or amount in pending actions in state court. Because both actions have not progressed into discovery let alone to judgment, such contingent and disputed claims cannot confer standing for purposes of the statute.

2.    Second, even if the eligibility requirements are met (which they are not), the record will show the Petitioning Creditors filed this case for an improper purpose and in bad faith as an

---

[1]    Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed to them in the Motion.

attempt to extract payment and due to their unhappiness with the ABC Proceeding.  Each of the

Petitioning Creditors had actual knowledge that the Secured Parties had foreclosed on and sold

substantially all of the Alleged Debtor's assets to a third party, yet they still chose to file the

Involuntary Petition as to exert leverage over the Alleged Debtor.  Even worse, one of the

Petitioning Creditors, SLFAQ, actually took to Twitter to solicit other creditors to join in the

Involuntary Petition.  These actions, among others that are further discussed below, should not be

condoned and rewarded with a Bankruptcy Proceeding that will only add further costs and expense

on an already depleted estate.

3.      If the Court does not dismiss the Involuntary Petition based on the Petitioning

Creditors' unqualified status, improper purpose or bad faith, the Court should abstain and dismiss

under section 305 of the Bankruptcy Code because the best interests of the Alleged Debtor's

creditors are better served through the ABC Proceeding.  The Assignee stands as a fiduciary for

the Alleged Debtor's creditors and is well-positioned to maximize the value (if any) of the Alleged

Debtor's assets if the opportunity arises.  The Petitioning Creditors, clearly frustrated by

circumstances that were out of the Alleged Debtor's and the Assignee's control, cannot be allowed

to compel a chapter 7 trustee to waste time and resources on a potentially "no asset" case when a

viable, cost-efficient alternative is already in progress.  Accordingly, abstention and dismissal

under section 305 is also warranted here.

4.      Finally, to the extent the Court dismisses this case based on, among other things,

bad faith by the Petitioning Creditors, the Movants respectfully request relief under sections 303(i)

and 303(e) of the Bankruptcy Code.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing referral order under Local Rule 40.3.1 of the United States District Court for the Northern District of Illinois, dated September 30, 2021.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 303 and 305(a) of the Bankruptcy Code, Bankruptcy Rule 1011, and Civil Rule 12(b)(6).

7.      Pursuant to Rules 1018 and 7008, the Movants do not consent to the entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.      Historical Background**

8.      VHSC is an Illinois corporation that was previously headquartered in Vernon Hills, Illinois.  Founded in 1865, VHSC was a global distributor of hospitality products, including janitorial and sanitation products, linens, bathroom accessories and guest room amenities.  The products, services, capabilities, and family culture that distinguish VHSC can be directly traced to the nation's earliest hotels and their practice of greeting guests with a hotel registration book; a rich history that remains imbued in every aspect of its business.  For over 150 years, VHSC's family-friendly culture and reliability have remained a key component of its brand.  Gupta Decl., ¶ 4.

9.       VHSC's operations were funded by operating revenue and borrowings from that certain Amended and Restated Credit Agreement, dated as of the March 14, 2019 (the "Initial Credit Agreement") (as amended, restated, supplemented or otherwise modified time to time, the "Prepetition Credit Agreement"),[2] by and among VHSC, Wells Fargo Bank, N.A. as the administrative agent ("Wells" or the "Agent") and the lenders party thereto from time to time (the "Lenders," and together with the Agent, the "Secured Parties").  Certain affiliates of VHSC are guarantors of the obligations owed under the Prepetition Credit Agreement (together with VHSC, the "Borrowers").  *Id.* at ¶ 5.

10.      Under the terms of the Initial Credit Agreement, the Lenders provided revolving loan commitments in an amount not to exceed $125,000,000.00 and other financial accommodations to the Borrowers.  The Borrowers secured their obligations under the Prepetition Credit Agreement by granting Wells, for the benefit of the Lenders, first-priority liens on substantially all of their assets (the "Collateral").  The Collateral includes, among other assets, all of VHSC's and its affiliates' General Intangibles (as that term is defined in the Illinois Uniform Commercial Code (the "UCC")), which includes VHSC's commercial and tort claims.  *Id.* at ¶ 6.

---

[2]      A true and correct copy of the Initial Credit Agreement and the related Security and Guaranty Agreement are attached to the Gupta Declaration as Exhibit A thereto.

## II.    Impact of the COVID-19 Pandemic and the Foreclosure Sale

11.    At the end of 2019, VHSC and its affiliates were finishing a year of top-line and margin performance, with total net sales of approximately $967 million, a performance slightly above its average over the five years prior. *Id.* at ¶ 7.

12.    Notwithstanding this success, VHSC's business and revenue was decimated by the COVID-19 pandemic. *Id.* at ¶ 8. Furthermore, distribution changes within the Company's business led to additional loss in the Company's gross sales. *Id.*

13.    As a result, the Borrowers and the Secured Parties entered into two amendments (the "First Amendment" and the "Second Amendment")[3] to the Initial Credit Agreement on August 13 and November 13, 2020, respectively, the aggregate effect of which, among other things, reduced the revolving loan commitments from $125,000,000.00 to $62,500,000.00 and compelled VHSC to commence a sale process to pay off its obligations to the Secured Parties. *See id.* at ¶ 9. That sale process ultimately proved unsuccessful. *Id.*

14.    While the sale process was ongoing, on December 28, 2020, Wells sent notice to the Borrowers of their default under the Prepetition Credit Agreement (the "Default Notice").[4] *Id.* at ¶ 10.

15.    On February 4, 2021, the Borrowers and Secured Parties engaged in extensive negotiations regarding the Borrowers' defaults under the Prepetition Credit Agreement which resulted in a third amendment (the "Third Amendment")[5] to the Prepetition Credit Agreement. *Id.*

---

[3]    A true and correct copy of the First Amendment is attached to the Gupta Declaration as Exhibit B and a true and correct copy of the Second Amendment is attached to the Gupta Declaration as Exhibit C.

[4]    A true and correct copy of the Default Notice is attached to the Gupta Declaration as Exhibit D thereto.

[5]    A true and correct copy of the Third Amendment is attached to the Gupta Declaration as Exhibit E.

at ¶ 11. Under the Third Amendment, the Secured Parties agreed to extend their forbearance to allow the Borrowers to conduct a second sale process to pay off its obligations to the Secured Parties. *Id.* This second sale process also proved unsuccessful. *Id.*

16.    In sum, through these two sale processes, the Borrowers contacted and engaged approximately 200 parties but ultimately were unable to finalize an acquisition agreement with any of the parties participating in the process. *Id.* at ¶ 12.

17.    As a result of continuing defaults by the Borrowers, the Agent had the right under applicable law to transfer for value in a public or private sale all or any portion of the Borrower Parties' right, title and interest in and to any or all of its Collateral.

18.    In connection with those rights, on June 11, 2021, the Agent sent notice (the "UCC Notice")[6] of its intention to sell the Collateral at a private sale in accordance with Article 9 of the Uniform Commercial Code. *Id.* at ¶ 13.

19.    On July 7, 2021, the Borrowers and the Secured Parties entered into a fourth amendment to the Prepetition Credit Agreement (the "Fourth Amendment"),[7] the terms of which, among other things, further reduced the revolving loan commitment from $62,500,000.00 to $17,500,000.00. *Id.* at ¶ 14.

20.    On August 3, 2021, the Agent foreclosed on the Collateral. That same day, VHSC, along with the other Borrowers, entered into that certain Voluntary Surrender Agreement (the "Surrender Agreement"),[8] made by and among the Borrowers and the Agent, whereby VHSC agreed to voluntarily surrender all of the Collateral to the Agent other than assets of *de minimis*

---

[6]    A true and correct copy of the UCC Notice is attached to the Gupta Declaration as Exhibit F.

[7]    A true and correct copy of the Fourth Amendment is attached to the Gupta Declaration as Exhibit G.

[8]    A true and correct copy of the Surrender Agreement is attached to the Gupta Declaration as Exhibit H.

value (as defined in the Foreclosure Sale Agreement (as defined below), the "Other Assets").  *Id.* at ¶ 15.

21.    Also on August 3, 2021, the Agent, the Borrowers (to a limited extent), and Consolidated Hospitality Supplies, LLC ("CHS"), an unrelated third party, entered into that certain Private Sale Agreement (the "Foreclosure Sale Agreement")[9] by which the Agent sold (the "Foreclosure Sale") all of its rights, title and interest in the Collateral to CHS.  *Id.* at ¶ 16.  In addition, to facilitate the sale of the Collateral, VHSC sold certain assets of *de minimis* value directly to CHS in exchange for CHS's funding of the ABC Proceeding (as defined below) and certain other winddown and transition costs.  *Id.*

22.    Under the terms of the Foreclosure Sale Agreement, certain of the Collateral was not sold by the Agent to CHS (the "Excluded Assets").[10]  The Excluded Assets are believed to hold little to no value and are the only assets that were assigned to the Assignee.  *Id.* at ¶ 17.

23.    The Secured Parties were not paid in full by the proceeds of the Foreclosure Sale Agreement and hold validly-perfected secured liens on and claims against the Excluded Assets in an amount of approximately $1 million.  *Id.* at ¶ 18.[11]

---

[9]    A true and correct copy of the Foreclosure Sale Agreement is attached to the Gupta Declaration as Exhibit I.

[10]    The list of Excluded Assets is attached as Exhibit A to the Foreclosure Sale Agreement.  *See* Gupta Decl. Ex. I.

[11]    A true and correct copy of the UCC Financing Statement Amendments, as filed by the Agent on August 3, 2021, are attached to the Gupta Declaration as Exhibit J thereto.  As stated therein, the Agent indicated the following collateral change in such filings:

"Secured Party hereby releases its security interest solely with respect to the 'Purchased Assets' and 'Other Assets' as those terms are defined in that certain Private Sale Agreement, entered into as of August 3, 2021, by and between the Secured Party and Consolidated Hospitality Supplies, LLC, provided, that, the foregoing shall not release, waive, or otherwise modify Secured Party's security interest in any other assets of the Debtor not constituting the released Purchased Assets or Other Assets."

III.    **The Filing of the Assignment for the Benefit of Creditors in the Delaware Court of Chancery**

24.    Following the Foreclosure Sale, and in light of VHSC's financial situation, VHSC had insufficient monies to satisfy its remaining debt obligations. *Id.* at ¶ 19. Accordingly, VHSC, in its business judgment, determined that transferring all of its remaining assets to the Assignee pursuant to that certain *Trust Agreement and Assignment for the Benefit of Creditors of Vernon Hills Service Company* (the "Assignment")[12] was the best and most efficient way to distribute the remaining value of the Excluded Assets, if any, to VHSC's creditors. *Id.*

25.    On September 9, 2021 (the Assignment Date"), VHSC and the Assignee entered into the Assignment, whereby the Assignee took possession of all of VHSC's assets, which are composed of only the Excluded Assets. *Id.* at ¶ 20.

26.    On September 10, 2021, the Assignee filed the *Verified Petition for Assignment for the Benefit of Creditors* in the Delaware Court of Chancery (the "Chancery Court"), commencing Case No. 2021-0783-PAF (the "ABC Proceeding")[13] before Vice Chancellor Paul A. Fioravanti. Gupta Decl. Ex. L. The Chancery Court entered an order[14] recognizing the ABC Proceeding on September 21, 2021. Gupta Decl. Ex. M.

27.    On October 11, 2021, the Assignee filed the *Affidavit of Sandeep Gupta in Support of Schedule of Inventory* (the "Inventory Affidavit"), which attached as Exhibit A thereto an

---

[12]    The Assignment is attached to the Gupta Declaration as Exhibit K thereto.

[13]    A true and correct copy of the verified petition commencing the ABC Proceeding is attached to the Gupta Declaration as Exhibit L.

[14]    A true and correct copy of the Order recognizing the ABC Proceeding is attached to the Gupta Declaration as Exhibit M.

inventory (the "<u>Inventory</u>")[15] of the ABC estate. Gupta Decl. at ¶ 22. As demonstrated by the Inventory, the only assets in the Assignee's possession are VHSC's direct equity interests in two wholly-owned foreign subsidiaries, VHSC International Hotel Supply Coöperatief U.A. and International Hotel Supply (India) Private Limited. *Id*. The Assignee is actively seeking opportunities to maximize the value (if any) in these assets. *Id.*

28.    In connection with the Inventory Affidavit, the Assignee ran searches for liens and other encumbrances concerning VHSC in the secretary of state offices, county recording offices and various courts located within the States of Illinois and Delaware. *Id.* at ¶ 23. As set forth in Exhibit B to the Inventory Affidavit, these searches identified that VHSC's assets are subject to liens, security interests, or other encumbrances held by the following entities:[16]

| **List of Encumbrances** |
| --- |
| The Agent |
| CIBC Bank USA |
| Citibank, N.A. |
| Graycliff Mezzanine II LP |
| John Hancock Life Insurance Co. (U.S.A.) |
| Konica Minolta Premier Finance |
| S. & D. Coffee, Inc. |
| VEEAM Payment Solutions |

---

[15]    The Inventory Affidavit, with its accompanying exhibits, is attached to the Gupta Declaration as Exhibit N thereto.

[16]    Pursuant to the Inventory Affidavit, the Assignee does not represent or warrant this information is accurate or without error.

29.     On October 4, 2021, the Assignee mailed the *Notice of Commencement of Assignment for the Benefit of Creditors* (the "Notice of ABC") and proof of claim form to those creditors listed in Exhibit B (the "Creditor Matrix") to that certain *Affidavit of Mailing*.[17]  Gupta Decl. Ex. O (showing affidavit of service).  The Notice of ABC informed all creditors on the Creditor Matrix of, among other things, the (i) circumstances surrounding and the closing of the Foreclosure Sale, (ii) commencement of the ABC Proceeding, and (ii) establishment of a proof of claim deadline of October 21, 2021 at 5:00 p.m. (CST) (the "Claims Bar Date").

30.     Each of the Petitioning Creditors, or their affiliates that did business with VHSC, were on the Creditor Matrix that received the Notice of ABC.  Gupta Decl. ¶ 25; *Id.* at Ex. O, pp. 9 (listing "A.S. Hospitality", an affiliate of Dexter Hospitality, Inc.), 23 (listing "Bic Corporation", an affiliate of Scribe), 160 (listing "The Winsford Company LLC Forbes Industries").

## IV.     Purported Claims of Certain Petitioning Creditors

### A.   The Dexter Action and Transfer of Claim to SLFAQ

31.     On July 9, 2020, Alex D. Moglia and Moglia Advisors, the receiver for Dexter Hospitality, Inc. ("Dexter"), an affiliate of A.S. Hospitality, a former vendor of VHSC, filed a single-count Complaint for Damages on Sworn Account and for Breach of Contract (the "Dexter Complaint" or the "Dexter Claim")[18] against VHSC in the Chancery Court of Shelby County, Tennessee (the "Tennessee Chancery Court"), commencing the case of *Moglia and Moglia*

---

[17]     A true and correct copy of the affidavit of mailing is attached to the Gupta Declaration at Exhibit O.

[18]     A true and correct copy of the Dexter Complaint is attached to the Ryan Declaration at Exhibit A.

*Advisors, as Receiver for Dexter Hosp., Inc. v. American Hotel Reg. Co.*, Case No. CH-20-0815

(Tenn. Ch. 2020) (the "<u>Dexter Action</u>").

32.    VHSC and Dexter had an agreement pursuant to which Dexter manufactured and

shipped goods to VHSC or its customers.  Ryan Decl. Ex. A at ¶ 8.  In the Dexter Complaint,

Dexter alleges, among other thing, that:

- VHSC failed to pay Dexter in full for the services and goods tendered by Dexter (*see id*. at ¶ 9);

- As a result of VHSC's alleged failure to pay Dexter, VHSC is allegedly indebted to Dexter in the total amount of $276,598.91 (*id*. at ¶ 13); and

- VHSC's alleged failure to pay Dexter in full for the goods and services tendered by Dexter is a breach of their agreement.  *Id*. at ¶ 22.

33.    On October 28, 2020, VHSC filed an answer and sworn denial (the

"<u>Dexter Answer</u>") to the Dexter Complaint.[19]  In the Dexter Answer, VHSC denied, among

other things, that:

- VHSC failed to pay Dexter in full for the services and goods tendered by Dexter (*see* Ryan Decl. Ex. B ¶ 9);

- VHSC is indebted to Dexter in the amount of $276,598.91 (*id*. at ¶13); and

- VHSC breached its agreement with Dexter.  *Id.* at ¶ 22.

34.    VHSC also raised, among others, the affirmative defenses of the doctrines of

waiver, estoppel, release, accord and satisfaction, and payment.  *Id.* at ¶¶ 26-30.

35.    Moreover, VHSC stated in the Dexter Answer that "the [Dexter] Complaint and

each count thereof fails to state a cause of action upon which relief may be granted against

---

[19]     A true and correct copy of the Dexter Answer is attached to the Ryan Declaration at Exhibit B.

[VHSC]," and requested the court dismiss the Dexter Complaint.  *Id.* at ¶¶ 32-33.  VHSC also reserved the right to amend the Dexter Answer.  *Id.* at ¶ 32.

36.     In  support  of  the  denials  contained  in  the  Dexter  Answer,  VHSC contemporaneously filed a sworn affidavit signed by Ron Berg, a Senior Vice President of Supply Chain at VHSC.  *See id.* at p. 4.

37.     Based on information and belief, on June 22, 2021, Dexter transferred the Dexter Claim to SLFAQ pursuant to that certain *Dexter Sale of Remnant Assets Including Current Collection Suits Asset Purchase Agreement* (the "Dexter Claim Sale Agreement").  *See* D.I. 4 Ex. A.  The Tennessee Chancery Court, which was overseeing the receivership of Dexter, approved the sale on July 19, 2021.  D.I. 4 Ex. B.  The order approving the sale in the Tennessee Chancery Court lists the purchase price as $30,000.[20]  *See* Ryan Decl. Ex. C.

38.     On September 23, 2021, attorney Joseph E. Sarachek, the signatory for SLFAQ on the Dexter Claim Sale Agreement, posted the following on Twitter:[21]



---

[20]      A true and correct copy of the Order approving the Dexter Claim Sale Agreement is attached to the Ryan Declaration as Exhibit C.

[21]      Joseph    Sarachek    (@Restructurings),    TWITTER    (Sept.    23,    2021,    3:04    PM), https://twitter.com/Restructurings/status/1441116203863326724.

39.    To date, SLFAQ has failed to enter its appearance in the Dexter Action. Ryan Decl. ¶ 4. Moreover, there have been no filings in the Dexter Action, nor has any discovery been taken, since the filing of the Dexter Answer on October 28, 2020. *See id.* It follows that no judgment has been rendered in the case.

B.    The Scribe Action

40.    On February 20, 2021, Scribe Opco, Inc., d/b/a Koozie Group, filed a two-count complaint (the "Scribe Complaint" or the "Scribe Claim")[22] against VHSC in the Circuit Court of Cook County, Illinois, commencing the case of *Scribe Opco, Inc., v. American Hotel Register Co.*, Case No. 2021-L-001563 (the "Scribe Action"). Count I of the Scribe Complaint is for "Account Stated" and Count II is a claim for prejudgment interest. Kay-Oliphant Decl. Ex. A.

41.    In the Scribe Complaint, Scribe alleges that between November 2018 and March 2020, VHSC at various times purchased goods from Scribe. *See id.* at ¶¶ 4–5. Scribe also alleges, among other things, that:

- After allowing VHSC "all just credits, deductions, and setoffs there remains due and owing from [VHSC] to [Scribe] . . . $269,782.44" (*see id.* at ¶ 21); and

- VHSC accepted the goods from Scribe without ever making an objection to the invoices or the goods. *See id.* at ¶ 24.

42.    On July 29, 2021, VHSC filed an answer (the "Scribe Answer")[23] to the Scribe Complaint. In the Scribe Answer, VHSC:

- Denied that after allowing all just credits, deductions and setoffs there remained an amount due of $269,782.44 (*see id.* at ¶ 21); and

---

[22]    A true and correct copy of the Scribe Complaint is attached to the Kay-Oliphant Declaration as Exhibit A thereto.

[23]    A true and correct copy of the Scribe Answer is attached to the Kay-Oliphant Declaration as Exhibit B thereto.

14

- Denied that it accepted the goods from Scribe without ever making an objection to the invoices or the goods. *See id.* at ¶ 24.

43.     VHSC also raised a number of affirmative defenses to the Scribe Complaint, which Scribe moved to strike (the "Scribe Motion to Strike") on August 9, 2021.[24]  Kay-Oliphant Decl. Ex. C.

44.     On September 13, 2021, the court entered an order granting Scribe's motion to strike VHSC's affirmative defenses because VHSC advised the Court that VHSC would not oppose the motion.[25]  *See* Kay-Oliphant Decl. Ex. D.  In that same order, the court also scheduled the Scribe Action for a status conference on October 18, 2021.  *See id.*  However, four days before the scheduled status conference in the Scribe Action, counsel for the Petitioning Creditors, who is also counsel to Scribe in the Scribe Action, filed the Involuntary Petition on behalf of all Petitioning Creditors.  Kay-Oliphant Decl. Ex. A; D.I. 1.

## V.     The Filing of the Involuntary Bankruptcy Petition

45.     On October 14, 2021, the Petitioning Creditors filed the Involuntary Petition against the Alleged Debtor, thereby commencing this case (the "Bankruptcy Proceeding").  D.I. 1.

46.     The Petitioning Creditors listed on the Involuntary Petition are Winsford, Scribe, and SLFAQ.  *Id.*  The Petitioning Creditors each allege they hold a claim for goods sold and delivered.  *Id.* at ¶ 13.  SLFAQ asserts a claim for $276,598.91, Scribe asserts a claim for $269,782.44, and Winsford asserts a claim for $307,984.24, for a total of $855,365.59.  *Id.*

---

[24]     A true and correct copy of the Scribe Motion to Strike is attached to the Kay-Oliphant Declaration as Exhibit C thereto.

[25]     A true and correct copy of the Order granting the Scribe Motion to Strike is attached to the Kay-Oliphant Declaration as Exhibit D thereto.

47.    On October 19, 2021, SLFAQ filed a statement under Bankruptcy Rule 1003(a) (the "1003 Statement") averring, under penalty of perjury, that SLFAQ had not purchased the Dexter Claim for the purpose of commencing a case for liquidation under chapter 7.  D.I. 4.  Attached to the 1003 Statement as Exhibit A was the Dexter Claim Sale Agreement and attached as Exhibit B was the order approving same from the Dexter receivership action.  *Id.*  Both the Dexter Claim Sale Agreement and the order approving the sale redact the purchase price, *id.*, notwithstanding that the publicly-available order approving the sale in the Tennessee Chancery Court reveals the purchase price to be $30,000.  *See* Ryan Decl. Ex. C.

## RELIEF REQUESTED

48.    By this Motion, pursuant to sections 303 and 305 of the Bankruptcy Code, Bankruptcy Rule 1011, and Civil Rule 12(b)(6), the Movants seek entry of the Order dismissing the Involuntary Petition, or in the alternative, abstaining from entering an order for relief on the Involuntary Petition.  Additionally, to the extent the Court finds the Involuntary Petition was filed in bad faith, the Movants request an award for fees, costs, and damages under section 303(i). Lastly, in the event the Court does not dismiss the Involuntary Petition at this stage, the Movants request the Petitioning Creditors post a bond pursuant to section 303(e) of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

I.    **THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THE PETITIONING CREDITORS DO NOT HOLD THREE QUALIFYING CLAIMS AS REQUIRED BY SECTION 303(b)(1)**

49.    Section 303(b)(1) of the Bankruptcy Code contains three prerequisites for commencing an involuntary case against a debtor that has more than twelve creditors: (1) there must be three or more petitioning creditors; (2) each petitioning creditor must hold a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount; and (3) such noncontingent, undisputed claims must, in the aggregate, be in an unsecured

16

amount of at least $16,750.  11 U.S.C. § 303(b)(1).  A court must dismiss the petition if these

requirements are not met.  *See In re West Side Cmty. Hosp., Inc*., 112 B.R. 243, 256 (Bankr. N.D.

Ill. 1990).  The burden of proof to establish standing under Section 303(b) rests with the petitioning

creditors.  *See id*. at 253.

50.     In the Seventh Circuit, the court applies an objective standard to determine whether

a debt is subject to a bona fide dispute under section 303(b)(1).  *In re Matter of Busick*, 831 F.2d

745, 750 (7th Cir.1987).  Specifically,

> the bankruptcy court must determine whether there is an objective
> basis for either a factual or legal dispute as to the validity of the debt.
> However, the statute does not require the court to determine the
> outcome of any dispute, only its presence or absence. Only a limited
> analysis of the claims at issue is necessary.

*Id*.  "If there is a bona fide dispute as to either law or the facts, then the creditor does not qualify

and the petition must be dismissed."  *Id*.

51.     Where a claim is subject to pending litigation, there is strong evidence that a bona

fide dispute exists.  *See In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248 (6th Cir. 2006)

(affirming dismissal of involuntary petition where petitioning creditor knew or should have known

its claim was subject to a bona fide dispute given that the alleged debtor denied all allegations in

petitioning creditor's pending state court lawsuit); *In re Navient Sols., LLC*, 625 B.R. 801, 812

(Bankr. S.D.N.Y. 2021) (applying the objective standard and noting that 'pending litigation over

a claim strongly suggests' the existence of a bona fide dispute") (quoting *In re TPG Troy, LLC*,

492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013), *aff'd*, 793 F.3d 228 (2d Cir. 2015)).

52.     Moreover, a bona fide dispute as to *any* portion of the amount of a claim disqualifies

the holder of such claim.  *See, e.g.*, *Dep't Revenue v. Blixseth*, 942 F.3d 1179, 1185–87 (9th Cir.

2019) ("We . . . hold that a creditor whose claim is the subject of a bona fide dispute as to amount

17

lacks standing to serve as a petitioning creditor under [section] 303(b)(1) even if a portion of the

claim amount is undisputed."); *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir.

2016) (same); *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 660 (5th Cir. 2014) (same).  This

is the majority view among Courts of Appeal and should be adopted here.

53.     Because a bona fide dispute exists as to the liability and amount of the purported

claims held by SLFAQ and Scribe, the Involuntary Petition must be dismissed.

**A.     SLFAQ is Not a Qualified Petitioning Creditor Because its Purported Claim
is Subject to a Bona Fide Dispute as to Liability and Amount**

54.     Because the Dexter Action has not been litigated to judgment, or even progressed

beyond the initial pleadings stage, the Dexter Claim is subject to a bona fide dispute as to liability

and amount and cannot confer standing upon SLFAQ for purposes of section 303(b)(1).  *See

Busick*, 831 F.2d at 750 (holding that only the "presence or absence" of a dispute is dispositive on

the issues of bona fide dispute); *see also John Richards*, 439 F.3d at 258 (affirming bankruptcy

court's finding of a bona fide dispute where the alleged debtor denied all allegations in the

petitioning creditor's pending state court lawsuit and raised affirmative defenses).

55.     The facts and reasoning of *John Richards* are applicable here.  In that case, a

petitioning creditor, Adell, entered into an agreement with a homebuilder and alleged debtor, JRH,

whereby JRH agreed to sell a piece of land to Adell and build a home thereon.  *See* 439 F.3d at

252.  Dissatisfied with JRH's work, Adell filed suit against JRH and its principal in state court.

*See id*.  In response, JRH and its principal filed a joint answer denying the substance of all of

Adell's claims, raised affirmative defenses, and filed a counterclaim.  *See id.* at 253.  Less than a

week after JRH filed its response, Adell, as the sole petitioning creditor, filed an involuntary

chapter 7 petition against JRH.  *See id.*  JHR moved to dismiss the petition and sought fees, costs,

and damages on the grounds that the petition was filed in bad faith and the claim was subject to a

bona fide dispute. *See id*. The bankruptcy court agreed with the alleged debtor and granted JRH's motion to dismiss on the ground that the petitioning creditor's claim was subject to a bona fide dispute, explaining that "[t]he record that is before the court overwhelmingly establishes that there is a bona fide dispute . . . and that there are significant genuine issues of material fact concerning disposition of the issues raised in the state court case[.]" *See id*. (quoting bankruptcy court ruling) (internal alterations omitted). The bankruptcy court's orders dismissing the petition and awarding fees, costs, and damages were affirmed by the district court and the Sixth Circuit. *Id*. at 266–67.

56.     The facts are identical here. Dexter filed the Dexter Complaint based on its contract with VHSC and purported non-payment. Ryan Decl. Ex. A. VHSC answered, denying allegations and asserting affirmative defenses to the debt in its entirety. *Id*. at Ex. B. Since filing the Dexter Answer over a year ago, the docket has gone silent and discovery never commenced. Ryan Decl. ¶ 4. Then eight months later, SLFAQ buys the Dexter Claim. Ryan Decl. Ex C. Since that time, the Dexter Action continues to remain dormant. Ryan Decl. at ¶ 4. As such, the *only* undisputed facts of the Dexter Claim are the basic facts that an agreement between Dexter and VHSC existed whereby Dexter manufactured and shipped goods to VHSC and its customers while the balance of the issues have yet to be litigated. Ryan Decl. Ex. B ¶ 8. Because all material issues in the Dexter Action remain unresolved, the Dexter Claim is contingent, disputed and subject to a bona fide dispute that render it ineligible to confer standing to SLFAQ.

57.     Moreover, SLFAQ, as the purported assignee of the Dexter Claim, has not entered its appearance in the Dexter Action notwithstanding its purchase of the Dexter Claim in July of 2021 for $30,000. Despite the fact that the Dexter Action has been pending for over a year, SLFAQ has not put forth any effort to progress the Dexter Action to judgment nor shown any desire to

litigate.[26]  Instead, it has chosen to rely on the mere existence of the action as a basis for filing the Involuntary Petition.  This is insufficient under section 303(b)(1) and requires dismissal of the Involuntary Petition.

**B.     Scribe is Not a Qualified Petitioning Creditor Because its Claim is Subject to a Bona Fide Dispute as to Amount**

58.     Like the Dexter Claim, the Scribe Claim is subject to a bona fide dispute as to amount and is therefore insufficient to confer standing under section 303(b) of the Bankruptcy Code.  *See Busick*, 831 F.2d at 750; *John Richards*, 439 F.3d at 253; *In re Meltzer,* 516 B.R. 504 (Bankr. N.D. Ill. 2014) .

59.     VHSC has denied all of Scribe's allegations in the complaint that are pertinent to this Court's determination of the Involuntary Petition, namely, the amount of the purported claim. *See* Kay-Oliphant Decl. Ex. B ¶¶ 21, 24.  As such, the Scribe Action remains pending in Illinois state court and discovery has not yet commenced.  Since any form of judgment will not be obtained in the near term, it is clear that the Scribe Claim is subject to a bona fide dispute.  *Busick*, 831 F.2d at 750; *John Richards*, 439 F.3d at 253.

60.     The movants anticipate that Scribe may argue that VHSC admitted to owing some amount on the Scribe Claim.  This is a red herring under current law.  Specifically, even if VHSC owes some portion of the Scribe Claim (which it does not), the actual amount owing to Scribe, if any, remains unresolved and, under a plain reading of section 303(b), subject to a bona fide

---

[26]     Given the continued failure of Dexter and SLFAQ to prosecute the Dexter Claim, if the Dexter Action is resumed, VHSC will seek to have the action dismissed under Tennessee state law for failure to prosecute, giving rise to a further dispute as to the legal viability of the Dexter Claim.  *See Geico Gen. Ins. Co. v. G & S Transp., Inc.*, No. M2016–00430–COA–R3–CV, 2016 WL 6087660 (Tenn. Ct. App. Oct. 17, 2016) (affirming a trial court's dismissal for failure to prosecute when seventeen months had passed without any action on Geico's claims and Geico did not file a response to the motion to dismiss for failure to prosecute).

dispute.[27]  *See, e.g.*, *Blixseth*, 942 F.3d at 1186 ("We agree with our sister circuits' adherence to the statute's plain meaning and hold that a creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) **even if a portion of the claim amount is undisputed**.") (emphasis added); *Fustolo*, 816 F.3d at 10 ("Limiting petitioning creditors [under section 303(b)(1)] to only those claims that are of undisputed value [in total] is in line with" the aims of the statute); *Green Hills*, 741 F.3d at 660 ("Congress has made clear that a claimholder does not have standing to file an involuntary petition if there is a bona fide dispute as to liability or *amount* of the claim.") (emphasis in original) (internal citations omitted). Scribe had the opportunity to prosecute its claim and resolve the amount owed by VHSC, if any, but instead Scribe filed the Involuntary Petition notwithstanding the disputed nature of the claim. Thus, Scribe is not a qualified creditor under section 303(b) and the Involuntary Petition must be dismissed.

61.  The Bankruptcy Court for the Central District of Illinois's unpublished decision in *In re DemirCo Holdings Inc.* does not change this result.  No. 06-70122, 2006 WL 1663237 (Bankr. C.D. Ill. June 9, 2006).  First, in that case, the sole petitioning creditor and the alleged debtor were not in pending litigation in any other forum. *See id.*  Their dispute was informal, and not subject to an actual action that would have led to judgment, i.e., a bona fide dispute.  *See id.* Here, the Scribe Action is ongoing and was even scheduled for a status conference four days after the Petition Date.  Kay-Oliphant Decl. Ex. D (scheduling status conference for October 18, 2021). There is no question, then, that a bona fide dispute exists as to the Scribe Claim and is ongoing.

---

[27]    The Movants raise this issue directly as to Scribe due to the language in the pleadings of the Scribe Action. To the extent this same analysis applies to the Dexter Claim and/or the claim held by Winsford, the Movants reserve the right to raise the same argument as to those purported claims as well.

62.     Second, there the alleged debtor stipulated with the creditor that it owed at least an amount equal to the statutory threshold to confer standing under section 303(b).  *See DemirCo*, 2006 WL 1663237, at *2.  Here, VHSC has not stipulated to owing Scribe any of the alleged amounts in the Scribe Complaint.  Kay-Oliphant Decl. Ex. B, ¶ 21.  While VHSC concedes to paying "the proper amounts for which it was properly invoiced," Kay-Oliphant Decl. Ex. B, ¶ 6, such amounts, if any, have yet to be determined.

63.     Moreover, as noted by the Courts of Appeal that have addressed this issue, the *DemirCo* decision is inconsistent with a plain reading of the statute.  Section 303(b)(1) provides, in relevant part, that for a petitioning creditor to be eligible to bring an involuntary case, its claim must not be "subject of a bona fide dispute as to liability *or amount*."  11 U.S.C. § 303(b)(1) (emphasis added).  This statute simply does not contain any limiting language that would support the proposition that a bona fide dispute as to a portion of a claim does not equate to a bona fide dispute to the claim in toto.  *See, e.g.*, *Blixseth*, 942 F.3d at 1185 ("[T]he statute's plain language does not cabin disputes as to amount to only disputes that drop the amount of a claim below the statutory threshold.  Indeed, the statutory text does not qualify the word 'amount' at all.") (citing *Fustolo,* 816 F.3d at 10); *see also Green Hills*, 741 F.3d at 660.

64.     Accordingly, the Scribe Claim is insufficient to confer standing on Scribe for purposes of section 303(b)(1) of the Bankruptcy Code thereby necessitating dismissal of the Involuntary Petition.

## II.     THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE IT WAS FILED FOR AN IMPROPER PURPOSE AND IN BAD FAITH

### A.     The Filing of the Involuntary Petition Serves No Bankruptcy Purpose

65.     The filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor and, thus, should be carefully scrutinized by courts so as to

avoid injustice. *See In re Forever Green Athletic Fields, Inc.,* 804 F.3d 328, 335 (3rd Cir. 2015) (noting that courts "should be wary of creditors who may find alluring the 'retributive quality' of thrusting the debtor in bankruptcy"); *In re DSC, Ltd.,* 387 B.R. 174, 178 (Bankr. E.D. Mich. 2008) (the filing of an involuntary should be a measure of last resort). The central policy behind an involuntary bankruptcy is to protect against the threatened depletion of assets or to protect against the preferential treatment of other creditors. *See Forever Green,* 804 F.3d at 335; *Meltzer,* 516 B.R. at 514.

66.     Here, the Involuntary Petition serves no legitimate bankruptcy purpose. The Petitioning Creditors do not raise allegations that VHSC's assets (*i.e.,* the Excluded Assets) are in threat of being depleted. Indeed, they cannot make this assertion because the Excluded Assets amount to only equity holdings in foreign subsidiaries which, the Assignee believes, holds little to no value. More importantly, even if it is determined that the Excluded Assets hold some value, all such value is likely fully encumbered by the Agent and other junior liens that have been properly perfected against the property. *See* Gupta Decl. Ex. N (listing eight separate creditors who are secured by liens on the Excluded Assets).

67.     Nor can the Petitioning Creditors raise concerns regarding preferential treatment of creditors at their expense. *Cf. In re Luxeyard, Inc.*, 556 B.R. 627 (Bankr. D. Del. 2016) (finding involuntary proceeding is proper if necessary to assure equal distribution among creditors). To the contrary, all unsecured creditors of VHSC shall be treated equally under proper state law through the ABC Proceeding. *See* Assignment ¶ (g), Gupta Decl. Ex. K (providing waterfall for treatment after secured debt). Thus, it is clear that the Petitioning Creditors filed the Involuntary Petition solely for their own benefit in an attempt to force payment on their claims. Courts routinely find that filing an involuntary petition for these reasons is sufficient grounds for

23

dismissal. *Cf. Forever Green,* 804 F.3d at 336–37 (citing cases dismissing involuntary petitions used as a debt collection device); *In re Tichy Elec. Co. Inc.,* 332 B.R. 364, 376 (Bankr. N.D. Iowa 2005) (finding the power of an involuntary bankruptcy petition must be exercised for the good of entire creditor body and for legitimate bankruptcy purposes); *In re Metrogate, LLC,* 2016 Bankr. LEXIS 2242, at *39 (finding that petitioning creditors who initiate involuntary proceedings as a litigation tactic in another action act in bad faith).  In light of the Petitioning Creditors' improper purpose for filing the Involuntary Petition, this case should be dismissed.

      **B.**      **<u>The Involuntary Petition Was Filed in Bad Faith</u>**

      68.      Courts of Appeal outside of the Seventh Circuit have held that bad faith provides an independent basis for dismissing an involuntary petition.  *See, e.g.*, *Forever Green*, 804 F.3d at 330 ("We hold that bad faith provides an independent basis for dismissing an involuntary petition"); *Basin Elec. Power Coop. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir.1985) (affirming dismissal of involuntary chapter 7 petition filed in bad faith).  Under the facts and circumstances of this case, this Court should do so here.

      69.      To determine whether an involuntary petition has been filed in bad faith, this Court and others have utilized a "totality of the circumstances" standard.  *See, e.g.*, *Forever Green*, 804 F.3d at 336; *Meltzer*, 516 B.R. at 515 (applying the totality of the circumstances test to determine bad faith under section 303(i)(2)); *In re Betteroads Asphalt, LLC*, 608 B.R. 7 (Bankr. D.P.R. 2018). In applying this standard, courts have considered the following non-exhaustive factors:

          (1) the creditors satisfied the statutory criteria for filing the petition;

          (2) the involuntary petition was meritorious and/or the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;

          (3) there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;

24

(4) the filing was motivated by ill will or a desire to harass;

(5) the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;

(6) the filing was used as a tactical advantage in pending actions;

(7) the filing was used as a substitute for customary debt-collection procedures; and

(8) the filing had suspicious timing.

*See Forever Green*, 804 F.3d at 336.

70.      Here, several indicia of bad faith are present.  First, as noted above, at least two of the Petitioning Creditors fail to satisfy the requirements of section 303(b).  *See John Richards*, 439 F.3d at 257–59.  Both SLFAQ and Scribe had actual knowledge of the status of the Dexter Action and Scribe Action, respectively, yet chose to file the Involuntary Petition despite the pending bona fide disputes surrounding each claim.

71.      Second, the Petitioning Creditors failed to make a reasonable inquiry into the relevant facts and pertinent law before filing the Involuntary Petition.  To the contrary, each of the Petitioning Creditors received *actual* notice of the Foreclosure Sale and the ABC Proceeding by receipt of the Notice of ABC.  *See* Gupta Decl. ¶ 25; Gupta Decl. Ex. O (noting each Petitioning Creditor or their affiliate as being on the Creditor Matrix).  Therefore, they had knowledge that the Agent had proceeded and sold its collateral to a third party and that the Secured Parties were not paid in full.  *See* Gupta Decl. Ex. O.  And yet, instead of making an appearance in the ABC Proceeding or attempting to communicate with the parties on the Notice of ABC to determine what assets, if any, were available for distribution to unsecured creditors (which so many other creditors have done), the Petitioning Creditors proceeded to file this case.  This is indicative of bad faith.

72.     Third, there is no evidence by the Petitioning Creditors or any other party of preferential payments to other creditors nor of dissipation of VHSC's assets.  Instead, as it will become clear through discovery and at trial, the Assignee filed the ABC Proceeding after the Foreclosure Sale as a means to preserve any and all value in the Excluded Assets for the benefit of VHSC's creditors.

73.     Fourth, Mr. Sarachek's baseless and defamatory post on Twitter implicitly soliciting other creditors against VHSC demonstrates ill will and a desire to harass and harm VHSC and its representatives.  Putting aside the potential ethical issues with the post under applicable law,[28] the involuntary bankruptcy provisions of the Bankruptcy Code were not meant to foster such behavior.

74.     Fifth, the timing is suspicious as the Involuntary Petition was filed (i) after the Petitioning Creditors received Notice of the ABC Proceeding and the Foreclosure Sale and (ii) shortly before the Claims Bar Date.  While the Assignee is still reviewing timely filed claims submitted in connection with the ABC Proceeding, the extent to which the Petitioning Creditors filed claims and subjected themselves to jurisdiction of the Chancery Court should be considered by this Court in connection with its decision.

75.     Lastly, in addition to the enumerated factors above, this Court must scrutinize the circumstances surrounding SLFAQ's purchase of the Dexter Claim when determining if this case should be dismissed for bad faith.  While discovery has yet to be taken, the currently-available facts regarding this issue are as follows:

---

[28]     *See* N.Y. State Ethics Op. 1049 (2015) (finding that a Twitter post of interest only to individuals who have experienced a specific legal problem constitutes a solicitation under the New York Rules of Professional Conduct); N.Y.R. Professional Conduct 7.3 ("A lawyer shall not engage in solicitation: (1) by . . . real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client.").

i.      SLFAQ purchased the Dexter Claim in July 2021 (D.I. 4);

ii.     Despite allegedly purchasing all of Dexter Hospitality's remnant assets, SLFAQ paid only $30,000 for such assets (*id.*);

iii.    After purchasing the Dexter Claim in July 2021, SLFAQ does not, and has yet to, file an appearance in the Dexter Action or otherwise attempt to progress the litigation to judgment (Ryan Decl. ¶ 4);

iv.     On September 21, 2021, 11 days after the filing of the ABC Proceeding, Joe Sarachek, an attorney and the authorized signatory for SLFAQ, implicitly solicits other vendors of VHSC on Twitter (*see* Background, section IV, *supra*);

v.      On October 4, 2021, the Petitioning Creditors, including SLFAQ, receive actual notice of the ABC Proceeding (Gupta Decl. Ex. O);

vi.     On October 14, 2021, the Petitioning Creditors file the Involuntary Petition (D.I. 1);

vii.    On October 19, 2021, SLFAQ, by Joe Sarachek, files the Rule 1003 Statement with the purchase price redacted[29] despite such information being publicly available to those who have access to the docket of the Tennessee Chancery Court (*see* D.I. 4; Ryan Decl. Ex. C).

While it is yet to be determined whether these facts merely seem suspicious or demonstrate something more, the Movants respectfully submit that the impact of SLFAQ's purchase of the Dexter Claim should be considered prior to a determination on entry or denial of an order for relief.

76.     Therefore, given the "totality of the circumstances" detailed above, the Involuntary Petition should be dismissed with prejudice under section 303(b) for having been filed in bad faith.

*See In re Park Place Devel. Primary, LLC*, Case No. 21-10849-CSS (Bankr. D. Del. Nov. 2, 2021)

---

[29]    Bankruptcy Rule 1003(a) requires the transferee of a claim to "set[] forth the consideration for and terms of the transfer." Fed. R. Bankr. P. 1003(a). Considering that SLFAQ redacted the "consideration" of the transfer in its disclosure, the Movants submit that SLFAQ's failure to disclose this information further supports dismissal of the Voluntary Petition as SLFAQ is not a qualified petitioner. *See, e.g.*, *In re Clignett*, 567 B.R. 583 (Bankr. C.D. Cal. 2017) (dismissing involuntary petition for creditor's failure to comply with Bankruptcy Rule 1003(a)); *In re Banner Resources, LLC*, No. 24-60016-rlj7, 2021 WL2189085, at *1–2 (Bankr. N.D. Tex. May 28, 2021) (dismissing involuntary petition where creditor intentionally misrepresented facts related to the transfer).

(dismissing with prejudice involuntary chapter 7 petition filed in bad faith). To the extent additional facts are learned through discovery, the Movants expressly reserve and preserve their rights to supplement this Motion to include same.

### III. THE INVOLUNTARY PETITION SHOULD BE DISMISSED, OR THE COURT SHOULD ABSTAIN, PURSUANT TO SECTION 305 OF THE BANKRUPTCY CODE

77.    Section 305(a)(1) of the Bankruptcy Code provides, in relevant part, that: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Section 305 is often applied in the context of involuntary bankruptcy cases. *See In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008) (noting that case law on Section 305(a) was "dominated" by involuntary cases). The movant bears the burden to demonstrate that the interests of the debtors and creditors would benefit from dismissal or abstention. *Id.* at 462-63. Whether to dismiss or suspend a bankruptcy case under section 305(a)(1) is within the discretion of the bankruptcy court. *See In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 82 (Bankr. N.D. Ill. 2006) (citing *801 S. Wells St., L.P.*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)).

78.    When considering whether to dismiss or abstain a proceeding under section 305(a)(1) of the Bankruptcy Code, courts consider a non-exclusive list of factors, including:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving the equitable distribution of assets;

(5)  whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6)  whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7)  the purpose for which bankruptcy jurisdiction has been sought.

*801 S. Wells St., L.P.*, 192 B.R. at 723 (Bankr. N.D. Ill. 1996); *In re Crown Village Farm, LLC*, 415 B.R. 86, 95 (Bankr. D. Del. 2009); *In re Compañía de Alimentos Fargo, S.A.*, 376 B.R. 427, 434–35 (Bankr. S.D.N.Y. 2007).

79.     In addition to the seven factors above, courts have found relief under section 305 of the Bankruptcy Code warranted when there is a pending ABC proceeding.  *See In re Bailey's Beauticians Supply Co.*, 671 F.2d 1063, 1067 (7th Cir. 1982) (overruling district court's reversal of bankruptcy court's order dismissing involuntary petition in light of an alleged debtor's pending ABC proceeding and observing that, if section 305(a) of the Bankruptcy Code applied, dismissal would be appropriate); *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007) ("[t]ypical circumstances for dismissing under § 305(a)(1) include the pendency of proceedings such as assignments for the benefit of creditors"); *In re Cincinnati Gear Co.*, 304 B.R. 784, 785 (Bankr. S.D. Ohio 2003) (dismissing involuntary chapter 7 petition under section 305(a) in light of pending ABC proceeding where the case appeared to be a "no asset case"); *see also* Mike C. Buckley & Gregory Sterling, *What Banks Need to Know About ABCs*, 120 BANKING L.J. 48, 54 (2003) ("Replacing one professional fiduciary with another would generally be a waste of resources and time, and most such involuntary bankruptcies are dismissed, or the bankruptcy court abstains in deference to the existing ABC.").

80.     Here, each of the above factors is met in some fashion by the existence of the ABC Proceeding.  First, and most importantly, the ABC Proceeding is more economically efficient than

29

a chapter 7 proceeding. All of the Excluded Assets are subject to properly-perfected security interests held by the Agent and other secured creditors. *See* Gupta Decl. ¶ 18; Gupta Decl. Ex. J. Accordingly, if there was any value to distribute (which the Assignee believes there is not), there is no equity in VHSC's estate and the chapter 7 proceeding would be run for the sole benefit of VHSC's secured creditors. *See, e.g.*, *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 526 (Bankr. E.D.N.Y. 2016) ("the case should not be administered solely for the benefit of the secured creditors"); *Cincinnati Gear*, 304 B.R. at 785 (dismissing involuntary chapter 7 petition in part because the case appeared to be "a no asset case"); *In re HIE of Effingham, LLC*, No. 13-0393-DRH, 2014 WL 1304641, at *6 (S.D. Ill. Mar. 28, 2014) ("[i]t is now almost universally recognized that where the estate has no equity in the property, abandonment is virtually always appropriate because no unsecured creditor could benefit from administration.") (quoting *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000)). The lack of equity in the Alleged Debtor's estate in and of itself warrants dismissal or abstention under section 305(a).

81.     In the unlikely event that there would be residual value available for distribution to VHSC's creditors who are not secured, it is anticipated that all such value would be required to pay administrative expense claims. Specifically, the fees and expenses of the chapter 7 trustee and its professionals are entitled to administrative expense status. 11 U.S.C. § 507(a)(1)(C). Moreover, as this Court has held, the Assignee and its counsel would also be entitled to administrative expenses for pre- and postpetition services provided to the trustee. 11 U.S.C. §§ 503(b)(3)(E), 503(b)(4), 543(c)(2); *see also In re Stainless Sales Corp.*, 583 B.R. 717 (N.D. Ill. Mar. 30, 2018) (overruling objection of chapter 7 trustee and holding that both prepetition and postpetition services of assignee's counsel could be compensated as administrative expense claims); *In re Montemurro*, 581 B.R. 565 (Bankr. N.D. Ill. 2018) (allowing as an administrative

expense receiver's claim for reimbursement for services rendered to debtor prior to voluntary chapter 11 filing).  Thus, the Bankruptcy Proceeding would add needless expense and be a waste of time and resources for a chapter 7 trustee and the Court.

82.    The second factor also weighs in favor of dismissal because the interests of VHSC's creditors are already adequately protected in the pending ABC Proceeding by the Assignee, a fiduciary, in the Chancery Court.  *See, e.g.*, *Bailey's Beauticians*, 671 F.2d at 1067; *Macke Int'l Trade*, 370 B.R. at 247; *Cincinnati Gear*, 304 B.R. at 785.

83.    Third, most if not all issues in this case could be adequately adjudicated in the ABC Proceeding.  While the Assignee is not aware of any material causes of action that are held by the estate, even if such actions exist, all proceeds from such actions are subject to the blanket lien held by the Secured Parties.  Gupta Decl. Ex. A.  Accordingly, federal jurisdiction is not necessary to extract value.

84.    Fourth, to the extent there is any value in VHSC's estate, the ABC Proceeding is a viable alternative means by and through which VHSC's assets will be liquidated and the proceeds thereof will be equitably distributed in accordance with the Assignment.  Gupta Decl. Ex. K.

85.    With respect to the sixth factor, as shown above, the Assignee has been in involved in administering VHSC's assets for the past two months.  During that time, the Assignee and its counsel have become familiar with VHSC's assets and liabilities, the Claims Bar Date has been established and elapsed, and the Assignee is actively reviewing timely-submitted claims.  *See* Gupta Decl., ¶ 26.  Moreover, the Assignee is actively pursuing means by which to maximize the value of the Excluded Assets.  *Id.* at ¶ 22.  Given these facts, the court should not waste its judicial resources in restarting this liquidation process.  *See, e.g.*, *Short Hills Caterers Inc.*, 2008 Bankr.

31

LEXIS 1726 (Bankr. D.N.J. June 4, 2008) (dismissing the bankruptcy case after finding that "judicial economy and efficiency warrant the continuation of the ABC Proceeding").

86.     With respect to the final factor, the Movants reiterate their argument in section II of this Motion, and respectfully submit that the Petitioning Creditors sought bankruptcy jurisdiction for an improper purpose and in bad faith.

87.     Therefore, to the extent this Court does not dismiss under the other bases set forth in this Motion, it should dismiss or abstain under section 305 of the Bankruptcy Code.

## IV.    THE ALLEGED DEBTOR SHOULD BE AWARDED ITS FEES, COSTS, AND DAMAGES UNDER SECTION 303(i)

88.     Petitioning creditors assume certain risks when filing an involuntary bankruptcy petition, namely, that pursuant to section 303(i) of the Bankruptcy Code the court may award fees, costs, and damages.  *See In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 905 (Bankr. N.D. Ill. 1994).  Section 303(i)(1) allows an award of fees and costs as long as three requirements are met: "(1) the court must have dismissed the involuntary petition; (2) the dismissal must be other than on the consent of all petitioners and the debtor; and (3) the debtor must not waive its right to recovery under the statute."  *Meltzer*, 516 B.R. at 514 (quoting *Mundo,* 179 B.R. at 569).  When these requirements are met, there is a presumption in favor of an award.  *See id*.  When an involuntary petition has been filed in bad faith, section 303(i)(2) of the Bankruptcy Code permits the court to award the debtor actual damages, punitive damages, or both.  *Id*. at 515.  The court may award costs and fees to the putative debtor under section 303(i) of the Bankruptcy Code even if the dismissal was under abstention principles.  *See Macke Int't.* Trade, 370 B.R. at 243; *In re Diloreto,* 388 B.R. 637 (Bankr. E.D. Pa. 2008).  Once an involuntary petition is dismissed, the alleged debtor bears the burden of proving the reasonableness of the costs and fees, *see Mundo*, 179 B.R. at 569, while the petitioning creditor bears the burden of proof justifying a denial of costs

and fees. *See In re Ross*, 135 B.R. 230, 238 (Bankr. E.D. Pa. 1991) (finding the burden shifts to the petitioning creditors to present evidence to disallow an award of fees).

89.     To the extent the Court dismisses the Involuntary Petition on, among other bases, a finding of bad faith, the Movants reserve and preserve all of their rights to seek a judgment against the Petitioning Creditors (i) in favor of the Alleged Debtor for costs and reasonable attorneys' fees and, (ii) to the extent appropriate, in favor of the Movants for proximate and/or punitive damages.

## V.   THE PETITIONING CREDITORS SHOULD BE REQUIRED TO POST A BOND PURSUANT TO SECTION 303(e)

90.     Section 303(e) of the Bankruptcy Code permits the court, "after notice and a hearing, and for cause," to require petitioning creditors to "file a bond to indemnify the debtor for such amounts as the court may later allow under [section 303](i)[.]"  11 U.S.C. § 303(e). According to the legislative history, section 303(e) was enacted in order to "discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor[.]"  *In re Apollo Health Street, Inc.*, No. 11-22970 (NLW), 2011 WL 2118230, *2 (Bankr. D.N.J. May 23, 2011) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 323 (1977)). Requiring a bond "insure[s] that if an award is made under § 303(i) the debtor ha[s] a ready means for recovery of its losses." *Id.* at *3.  And "in a case that is off to a shaky start and that is fraught with controversy about the bona fides of the petitioners," requiring a bond can have a "sobering effect" on the proceedings. *Id.* at *2 (internal quotation marks and citation omitted).

91.     The Movants submit that there is ample cause to require a bond pursuant to section 303(e).  As discussed above, the Involuntary Petition must be dismissed because the purported claims of (at least) two of the three Petitioning Creditors are ineligible under the statute and because the Involuntary Petition was filed in bad faith.  Further, the pending ABC Proceeding, and

the benefits it provides to VHSC's creditors, may itself be sufficient grounds for dismissal of the Involuntary Petition under section 305(a).  Requiring a bond from the Petitioning Creditors guarantees that, in the event the Involuntary Petition is dismissed on bad-faith grounds, the Movants can recover any fees, costs, and damages later awarded under section 303(i) of the Bankruptcy Code.  It would also reduce moral hazard by requiring the Petitioning Creditors to have some economic "skin in the game" if they intend to prosecute the Involuntary Petition.  For these reasons, the Petitioning Creditors should be required to post a bond pursuant to section 303(e).

## **RESERVATION OF RIGHTS**

92.     The Movants reserve the right to file and present other and further objections to the Involuntary Petition and the Bankruptcy Proceeding, including other and further objections derived from discovery, in more detail at a future date.

## **NOTICE**

93.     The Movants will provide notice of this Motion via overnight delivery upon counsel for the Petitioning Creditors and electronically via the Court's CM/ECF noticing system upon (i) the Office of the United States Trustee and (ii) counsel for the Petitioning Creditors.  In light of the nature of the relief requested herein, the Movants submit that no other or further notice is required under the circumstances.

WHEREFORE, the Movants respectfully request that the Court enter the Order, substantially in the form attached hereto, granting the relief requested herein and providing the Movants such other and further relief as is just and proper.

34

Dated: November 10, 2021    Respectfully submitted,

**VERNON HILLS SERVICE COMPANY and
VHSC ABC LLC**

By: _/s/ Joseph C. Barsalona II_
    One of Their Attorneys

**GENSBURG CALANDRIELLO & KANTER, P.C.**
Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (*pro hac vice* pending)
Email: dabbott@morrisnichols.com
Joseph C. Barsalona II (*pro hac vice* pending)
Email: jbarslona@morrisnichols.com
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone:  302-351-9118

*Counsel to Vernon Hills Service Company
(f/k/a American Hotel Register Company) and
VHSC ABC LLC*